## DUBBS v. BEATIE.
### Patent Appeal No. 3319.

Court of Customs and Patent Appeals.
June 12, 1934.

Charles M. Thomas and James P. Burns, both of Washington, D. C., for appellant.

Edmund G. Borden, of New York City (J. Austin Stone, of Washington, D. C., of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

This is an appeal in an interference proceeding from a decision of the Board of Appeals of the United States Patent Office, affirming a decision of the Examiner of Interferences, awarding priority of invention to appellee.

There is but one count in the interference, which reads as follows: "1. A process for cracking hydrocarbon oil under the pressure of self generated vapors which consist in maintaining successive bodies of oil under successively higher temperatures in separated zones, in taking off vapors from each zone and separately subjecting them to reflux condensation, in passing the reflux condensate obtained from the vapors taken off from a zone of lower temperature to the zone of next succeeding higher temperature without permitting such condensate to return to the zone in which the vapors from which it was condensed generated."

There was originally another count in the interference, numbered count 2, which was eliminated on a motion by appellant to dissolve the interference upon the ground that appellee could not make the claim corresponding to said count. Said motion also included the count here in issue, but as to this count the motion was denied. Because of certain contentions made with respect to said count 2, it is here reproduced as follows: "2. A process for cracking hydrocarbon oil under a self generated vapor pressure consisting in maintaining the oil undergoing treatment in a plurality of successive bodies under successively higher temperature conditions, in passing vapors generated from each of said bodies to an independent dephlegmator wherein reflux condensation occurs, in passing reflux condensate from each of said dephlegmators, except the dephlegmator to which the vapors generated from the body of oil maintained at the highest temperature are passed, directly to the body of oil maintained at the next successively higher temperature than the temperature at which the oil, from which the vapors producing the reflux condensate are released, is maintained."

The interference is between a patent issued to appellant, No. 1,716,306, on June 4, 1929, upon an application filed October 6,

1920, and an application filed by appellee on July 31, 1920.

The only question involved in this appeal is that of the right of appellee to make the claim corresponding to said count 1 here in issue. This count originated in appellant's patent, and was copied for purposes of interference by appellee.

Appellant contends that appellee's application does not disclose the following elements of the count: " * * * Maintaining successive bodies of oil under successively higher temperatures in separated zones * * * and * * * passing the reflux condensate obtained from the vapors taken off from a zone of lower temperature to the zone of next succeeding higher temperature. * * * " It is appellant's further contention that the element first above quoted is ambiguous when considered with the other elements of the count, and that therefore, in accordance with the well-established rule, the meaning given to the count must be that intended by the appellant, as disclosed in his patent from which the count was copied.

The Board of Appeals in its decision stated:

"The only question raised by Dubbs' appeal is the right of the party Beatie to make the count in issue. As is obvious from an inspection of the count, it relates to a process of cracking hydrocarbon oil. The count originated in the Dubbs patent. Dubbs' procedure involves the use of a series of stills into the first of which the oil to be treated is introduced. Both the residual oil and the condensate from the dephlegmator are passed to the second still of the series for further treatment and so on throughout the whole series. The stills of the series are maintained at such temperature that the successive treatments of oil and residuum take place at higher temperatures and pressures than the preceding treatments. The count in question contains no definite limitation as to the source of oil in the successive bodies specified. It is Dubbs' contention that the expression 'maintaining successive bodies of oil' requires, by reason of the word 'successive,' a flow of oil from one still to the next and a successive series determined by the direction of oil flow, the still in which the oil is initially treated being the first of the series, etc. While the count doubtless requires some series relationship of the oil bodies, we do not think it fairly requires such series relationship to be based on oil flow. We think it may as reasonably be based on the direction of condensate flow, as a prime consideration is the treatment of

condensate as it becomes lighter at successively higher temperatures and pressures. The series relationship might also be based on temperature or pressure.

"The Beatie application discloses three cracking coils utilized for the treatment of a body of oil. These coils have series relationships which correspond to those in the Dubbs patent in all respects except as to the direction of oil transfer. In Beatie the crude oil is fed initially to the coil having the highest temperature and pressure, and passes successively through the stills to the coil having the lowest temperature and pressure. On the other hand the vapors produced in the various coils have a countercurrent flow from the coil having the lowest temperature and pressure to the coil having the highest temperature and pressure so that, as in the Dubbs patent, the residual condensate is successively subjected to higher temperatures and pressures as it becomes lighter. When, as in lines 3 and 4, of the count, reference is made to bodies of oil under successively higher temperatures, a series relationship of. the bodies of oil is implied which in our·opinion is only definitely expressed by the term 'successive' in line 3. We do not think a fair interpretation of the count requires a reading into it that the successive oil bodies are successive only by reason of the direction of oil flow. It seems just as reasonable, inasmuch as the count is mainly concerned with the treatment of reflux condensate at successively higher temperatures, to base the series relationship of the oil bodies on the direction of the condensate flow or in the direction of rising temperature and pressure rather than on the direction of oil flow.

"As Dubbs' appeal is based primarily on the contention that the word 'successive' in line 3 of the count should be given the limited interpretation above discussed and as we are of the opinion that it is fairly susceptible of a broader interpretation, such as is given it by the Examiner of Interferences, it follows that the examiner's action must be affirmed."

■■ It is elementary that the counts of an interference must be given the broadest interpretation which they will reasonably permit, but that expressly defined limitations cannot be disregarded. It is also elementary that limitations may not be read into a count for the purpose of avoiding the issue of priority.

■ We will first consider the first element: " * * * Maintaining successive bodies of oil under successively higher temperatures in separated zones." If appellee does not dis-

close this element of the count, when properly construed, the decision of the Board must be reversed, and we need not consider the second contention of appellant, that appellee does not disclose another element of the count as hereinbefore described.

While appellant contends that the Board held that the element of the count last above quoted is ambiguous, and nevertheless declined to apply the rule that in such case resort must be had to appellant's patent for its meaning, we do not think the decision of the Board should be so construed. As we view it, the Board held that the phrase "maintaining successive bodies of oil," was broad enough to include series relationships other than a series based on oil flow. It will be observed that the Board stated: " * * * While the count doubtless requires some series relationship of the oil bodies, we do not think it fairly requires such series relationship to be based on oil flow. We think it may as reasonably be based on the direction of condensate flow, as a prime consideration is the treatment of condensate as it becomes lighter at successively higher temperatures and pressures. The series relationship might also be based on temperature or pressure."

We do not, however, agree with the Board that the series relationship may properly be held to be based upon the direction of condensate flow or upon temperature, for the reason that later elements of the count expressly provide for such series relationships, and therefore the phrase under consideration, "maintaining successive bodies of oil," if it embraces such series relationships, would be meaningless as a step in the process because they are provided for elsewhere in .the count. Neither are we impressed with the view of the Board that such series relationship might be based upon pressure.

Inasmuch as we do not. think that the phrase under consideration may be properly construed as including series relationships based upon the direction of condensate flow, or upon temperature, the question is: Do the words "maintaining successive bodies of oil" require a flow of oil from one still to the next and a successive series determined by the direction of oil flow, the still in which the oil is initially treated being the first of the series? That the phrase is broad enough to include such a mode of treatment of oil is conceded by the Board. It expressly held that the phrase "requires some series relationship of the oil bodies." As we hold that, for the reasons above stated, it does not include a series relationship based upon direction of condensate flow, or upon temperature or pres-

sure, we think that the term "successive" either reasonably refers to a flow of oil or the step is ambiguous and indefinite, thus requiring reference to the patent in which the count is found for interpretation. Brogden v. Slater, 40 F.(2d) 988, 17 C. C. P. A. (Patents) 1240; In re Nicolson, 49 F.(2d) 961, 18 C. C. P. A. (Patents) 1468.

It is clear to us that the only disclosure in appellant's patent upon which the count reads is that described by the Board of Appeals in its decision as follows: " * * * Dubbs' procedure involves the use of a series of stills into the first of which the oil to be treated is introduced. Both the residual oil and the condensate from the dephlegmator are passed to the second still of the series for further treatment and so on throughout the whole series. The stills of the series are maintained at such temperature that the successive treatments of oil and residuum take place at higher temperatures and pressures than the preceding treatments. * * * "

In view of this disclosure we are clear that the phrase, "maintaining successive bodies of oil," as used in the claim of the patent, was meant to refer to the direction of the oil flow, and we so hold. Under this construction appellee cannot make the claim, for he does not disclose a successive relationship of the oil bodies based on the flow of feed oil in the process under successive higher temperatures in separate zones. In appellee's disclosure the crude oil is fed initially into the coil having the highest temperature and passes successively through the stills to the coil having the lowest temperature; but, as stated by the Board, the vapors produced in the various coils have a countercurrent flow from the coil having the lowest temperature to the coil having the highest temperature.

The distinction, as far as material to the question here under consideration, is that in appellant's disclosure the feed oil and condensate pass successively from stills of low temperature to stills of higher temperature, while in appellee's disclosure the feed oil passes from coils of high temperature to coils of lower temperature, and the condensate passes from coils of low temperature to coils of higher temperature.

Construing the element of the count here under discussion according to the meaning intended by the disclosure of the patent, we hold that it does not read upon appellee's disclosure, and he therefore cannot make the claim corresponding to the count. It is therefore unnecessary for us to consider other elements of the count relied upon by appellant

as not being disclosed by appellee's application.

Appellee's counsel, in their brief, state:

"The party Dubbs apparently accepts the interpretation of count 2 as given by the Examiner of Interferences, and in this connection, it should be noted that the decision contains the following statement as quoted above: 'Count 2 otherwise appears to be equivalent in scope to count 1.'

"On the present appeal therefore, the party Dubbs is arguing for an interpretation of count 1 which will make it identical with count 2. The Dubbs appeal should therefore be dismissed. If the Dubbs patent contains a claim (which was count 2) covering the same subject-matter and drawn in the same scope which he contends for count 1, a decision in his favor would give him nothing more than he has."

It is only necessary to say, with respect to this contention, that it will be observed by an examination of original count 2 that it has several express limitations not involving the question in controversy here; so it cannot be said that, if count 1 be construed as contended for by appellant, and as held by us, it is identical with count 2. Therefore, the case of Oldroyd v. Morgan, 57 F.(2d) 358, 19 C. C. P. A. (Patents) 1111, relied upon by appellee, is not applicable to the case at bar.

After the record herein had been certified by the Commissioner of Patents, appellee suggested a diminution of the record, and we thereupon issued our writ requiring the Commissioner to certify to this court the papers suggested; our order providing that the cost of printing would be taxed upon our final decision in the case.

We do not think that the briefs of appellant before the Examiner and the Board of Appeals should have been made a part of the record. We find in them no admissions contrary to the position appellant's counsel has taken in this court.

As to the other papers, we think appellee was entitled to have them included in the record. The cost of printing such papers will be taxed against appellant. The cost of printing the briefs before the Patent Office tribunals will be taxed against appellee.

For the reasons stated herein, the decision of the Board of Appeals is reversed.

Reversed.

HATFIELD, Associate Judge, did not participate.